**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

**GULF DEALERS OF CONNECTICUT, a trade name adopted by the plaintiffs herein** — Civil Action No.

**v.**

**BLUE HILLS FUELS, LLC,**
**CUMBERLAND FARMS, INC.,**
**GULF OIL LIMITED PARTNERSHIP,**
**CHELSEA PETROLEUM PRODUCTS HOLDINGS, LLC,**
**CHELSEA PETROLEUM PRODUCTS I, LLC,**
**ARCLIGHT CAPITAL PARTNERS, LLC,**
**PMG NORTHEAST, LLC,**
**PETROLEUM MARKETING GROUP, INC.**
**Defendants** — November 30, 2016

## COMPLAINT – JURY TRIAL DEMANDED

## I. Parties:

1. The plaintiffs are: GASWORLD, LLC, WATERBURY GULF, LLC, HONEYSPOT GULF, LLC, COS COB GAS MART, LLC, HUNTINGTON CENTER GULF, LLC, HIGH RIDGE GULF, LLC each a limited liability company organized and existing under the laws of the State of Connecticut and with a principal place of business in Connecticut and LONG RIDGE SERVICE, INC., 95 EXPRESS, INC., NEW ENGLAND SELF-SERVE, INC. each a corporation organized and existing under the laws of the State of Connecticut and with a principal place of business in Connecticut, each of which plaintiffs has elected to adopt the trade name of GULF DEALERS OF CT for purposes of this litigation and related affairs (hereinafter plaintiffs shall be referred to collectively as "Gulf Dealers")

2. The defendants are: BLUE HILLS FUEL, LLC, CHELSEA PETROLEUM PRODUCTS I, LLC, and CHELSEA PETROLEUM HOLDINGS, LLC each a Delaware LLC with a principal place of business in Massachusetts, upon information and belief, the member of such LLC, the defendant, ARCLIGHT CAPITAL PARTNERS, LLC, is a citizen of either New York, Massachusetts or Delaware, but in any event not a citizen of the State of Connecticut; and CUMBERLAND FARMS, INC., GULF OIL LIMITED PARTNERSHIP each entities believed to be citizens of the Commonwealth of Massachusetts, but in any event not citizens of the state of Connecticut and PETROLEUM MARKETING GROUP, INC. and PMG NORTH EAST, LLC, each entities believed to be citizens of the Commonwealth of Virginia, but in any event not citizens of the State of Connecticut.

**II. Jurisdiction and Venue:**

3. Jurisdiction is proper in this Court pursuant to 28 U.S.C. sec. 1332, as there is diversity of citizenship and the amount in dispute exceeds the jurisdictional threshold.

4. Venue is proper in this Court pursuant to 28 U.S.C. sec. 1391 because all, or a substantial part of the events giving rise to the claim occurred in this District.

**III. Facts:**

5. The plaintiff Gulf Dealers were, at all relevant times, prior to December 29, 2015, parties to an "Assured Dealer Franchise Offering" with the defendant Gulf Oil Limited Partnership ("Gulf").

6. At all relevant times prior to December 29, 2015, the defendant, Gulf Oil Limited Partnership was a wholly-owned subsidiary of the defendant Cumberland Farms, Inc.

7. On or about December 29, 2015, the defendant, ArcLight Capital Partners, LLC ("ArcLight) purchased Gulf Oil Limited Partnership from Cumberland Farms, Inc.

8. The December 29, 2015 purchase was structured such that the petroleum sales operation was sold, transferred or otherwise assigned to ArcLight's wholly-owned subsidiary of the defendant, Chelsea Petroleum Products Holdings, LLC and/or the defendant Chelsea Petroleum Products I, LLC (hereinafter collectively "Chelsea") and the real estate assets were transferred to ArcLight's wholly-owned subsidiary, the defendant, Blue Hills Fuels, LLC ("Blue Hills").

9. Thereafter, the petroleum sales operation and the real estate assets were sold, assigned or otherwise transferred to the defendants PMG Northeast, LLC and/or Petroleum Marketing Group, Inc. (hereinafter collectively "PMG").

10. On or about September 20, 2016, the defendant, Blue Hills Fuels, LLC executed an "open-end mortgage, assignment of leases and rents, security agreement and fixture filing with Capital One, National Association".

11. On or about September 20, 2016, the defendant, Blue Hills Fuels, LLC executed an "Assignment of Leases and Rents" with Capital One, National Association.

12. In addition, one or more of the Gulf Dealers' service station locations was the subject of a real estate transaction between Chevron USA, Inc. and Cumberland Farms, Inc. after 2000.

13. At all relevant times since 2000, each of the Gulf Dealers' service stations was the subject of a "Assured Dealer Franchise Offering."

14. Each "Assured Dealer Franchise Offering" permitted a Gulf Dealer to occupy leased marketing premises, which premises were employed in connection with the sale, consignment or distribution of motor fuel under a trademark; namely "Gulf".

15. At the time of their execution, each of the "Assured Dealer Franchise Offering" documents constitute a franchise pursuant to Conn. Gen. Stat. §42-133 mm.

16. The Gulf Dealers herein purchased their franchises and continued operating their franchises only after having investigated Gulf and Cumberland Farms, Inc., meeting with their employees and concluding that a franchise relationship with them would be economically mutually beneficial for the Gulf Dealers, Gulf and Cumberland Farms.

17. In entering into the "Assured Dealer Franchise Offering", the Gulf Dealers relied upon Gulf and Cumberland Farms to fulfill their representations that they had made and to foster a long term relationship between the Gulf Dealers, Gulf and Cumberland Farms.

18. The Gulf Dealers relied upon Gulf and Cumberland Farms, Inc. to be ready, willing and able to fulfill the many contractual obligations of a gasoline franchisor and/or landlord that existed between the franchisor and Gulf Dealers.

19. The Gulf Dealers relied upon Gulf and Cumberland Farms in determining that the "Assured Dealer Franchise Offering" would be an economically beneficial relationship and that the Gulf dealers would profit from being a franchisee of Gulf and Cumberland Farms.

20. Gulf and Cumberland Farms entered into a transaction which purports to transfer each of the Gulf Dealers' "Assured Dealer Franchise Offering". The transaction also purports to sell Gulf's and Cumberland Farms, Inc.'s real estate interests (whether held by Cumberland Farms, Inc., Gulf or a subsidiary company) in the gasoline marketing premises that the Gulf Dealers currently lease.

21. Upon information and belief, both Gulf Oil Limited Partnership and Cumberland Farms, Inc. take the position that since it transferred the franchise and other contracts to Blue Hills Holdings, LLC, ArcLight Capital Partners, LLC , Chelsea Petroleum Products Holdings, LLC, Chelsea Petroleum Products I, LLC or such other entity, neither Gulf nor Cumberland Farms has any obligation to assure that the said entities perform the contractual obligations as set forth in the "Assured Dealer Franchise Offering" and the other contractual obligations with the Gulf Dealers.

22. Upon information and belief, Gulf and Cumberland Farms further take the position that whether or not the contractual obligations contained in the "Assured Dealer Franchise Offering" are adhered to by any other entity is no concern of theirs.

23. The financial resources, administrative resources, experience and general public standing of ArcLight, Blue Hills, Chelsea and/or PMG is not equal to, similar to, or comparable to that of Gulf and/or Cumberland Farms in the Connecticut market.

24. Further, ArcLight, Blue Hills, Chelsea and/or PMG, or any other entity to which Gulf or Cumberland sold, transferred or assigned their interests is not familiar with nor likely to comply with the culture and course of performance as it has existed between the plaintiffs and Gulf and Cumberland Farms.

25. As a result, the Gulf Dealers cannot be assured that ArcLight, Blue Hills, Chelsea and/or PMG or any other entity to which Gulf or Cumberland sold, transferred or assigned their interests can or will meet the obligations to the plaintiffs as their franchisor.

26. As a further result, the Gulf Dealers will be deprived of all or a substantial portion of the profits from the sale of motor fuels and other products and services.

27. As a further result, the Gulf Dealers' franchises will be devalued without compensation.

28. As a further result, the Gulf Dealers may be deprived of their rights to possession of real estate at which their stations are located or said rights may be devalued.

29. As a further result, the plaintiffs may be deprived of the right to obtain successive renewals of their franchises.

30. As a further result, the plaintiffs may be deprived of the value of their good will of their franchises or said good will may be devalued.

31. In addition to the foregoing, the defendants, Gulf and Cumberland Farms provided the plaintiffs with no advance notice of any of the aforementioned actions.

## COUNT I — CONNECTICUT UNFAIR TRADE PRACTICES ACT

32. Paragraphs 1 through 31 hereinabove are hereby incorporated by reference and made paragraphs 1 through 31 of this the First Count.

33. The Defendants are engaged in commerce throughout the State of Connecticut.

34. The actions of the defendants, as set forth hereinabove and hereinbelow, constitute unfair competition and/or unfair or deceptive acts and practices in violation of the Connecticut Unfair Trade Practices Act. Conn. Gen. Stat. § 42-110b et seq.

35. As a result of the foregoing, the Gulf Dealers suffered economic harm and will continue to suffer economic harm.

36. As a result, the plaintiffs are entitled to its remedies under Conn. Gen. Stat. § 42-110g.

## COUNT II – BREACH OF CONTRACT

37. Paragraphs 1 through 36 of the First Count are hereby incorporated by reference and made paragraphs 1 through 36 of this the Second Count.

38. To the extent that the ability to delegate duties (as distinct from assigning rights) is expressly or impliedly permitted by contract, Gulf and Cumberland Farms must nevertheless guarantee the performance of their delegatees with respect to the Gulf Dealers regardless of the length of said relationship.

39. In order for a party such as Gulf and/or Cumberland Farms to delegate its contractual duties to a third party, the other party to the contract; namely, the Gulf Dealers herein, must consent to the delegation. The Gulf Dealers have not consented to the delegation.

40. In addition, in order for a party such as Gulf and/or Cumberland Farms to delegate its contractual duties to a third party, the other party to the contract, in this case the Gulf Dealers herein, must be accorded full return performance by the delegatee of the contract.

41. The term of the franchise relationship is evergreen in nature by operation of statute and the Gulf Dealer's contract.

42. The Gulf Dealers have not received any assurance that Gulf or Cumberland Farms will guarantee or otherwise assure any other entities' performance of the contract or any renewal thereof.

43. The plaintiffs have not received any assurance that ArcLight, Chelsea, Blue Hills, Petroleum Marketing Group, or PMG Northeast, or any other entity will satisfactorily perform the contracts in a manner identical to Gulf or Cumberland Farms.

44. In addition to the foregoing, in 2013, Cumberland Farms Inc. designated all, or many of, the Gulf Dealers' "real estate assets for divestment."

45. One or more of the Gulf Dealers submitted offers to purchase their service stations in response to a solicitation by Cumberland Farms Inc. in conjunction with the proposed divestment.

46. One or more of the Gulf Dealers' offers met or exceeded the price ultimately accepted by Gulf and/or Cumberland Farms for the specific premises.

47. In conjunction with the proposed divestment, Cumberland Farms both orally and in writing advised the Gulf Dealers that "if Cumberland ultimately decides to sell the property to a third party, you will, of course, retain your rights to acquire the property".

48. In reliance upon Cumberland Farms' representation, the plaintiff Gulf Dealers continued their relationship with Gulf and Cumberland Farms, made improvements to their locations, made staffing and financial decisions and otherwise expended time and resources.

49. The documents as well as Gulf and Cumberland Farms' conduct created both express and implied contracts with the Gulf Dealers.

50. As a result, of the defendants' conduct the express and implied contracts with the Gulf Dealers have been breached by Gulf, Cumberland Farms, ArcLight, Blue Hills, Chelsea, and PMG.

51. As a further result, the plaintiffs suffered or will suffer damages as set forth.

52. As a further result, the plaintiffs are entitled to injunctive relief including specific performance of the express or implied contracts.

**COUNT III -COVENANT OF GOOD FAITH**

53. Paragraphs 1 through 52 of the Second Count are hereby incorporated by reference and made paragraphs 1 through 52 of this the Third Count.

54. A covenant of good faith and fair dealing is implied in each and every contract and contractual relationship.

55. The defendant's actions and proposed actions, as set forth hereinabove and hereinbelow, violate the implied covenant of good faith and fair dealing.

56. As a result each of the plaintiffs has suffered monetary damages.

**COUNT IV – DECLARATORY RELIEF**

57. Paragraphs 1 through 56 of the Third Count are hereby incorporated by reference and made paragraphs 1 through 56 of this the Fourth Count.

58. As a result, the plaintiffs are entitled to declaratory judgment that the delegation of performance by Gulf and/or Cumberland Farms without plaintiffs' consent is ineffective or in the alternative, holding that Gulf and/or Cumberland Farms is

obligated to guarantee and assure the performance of the contracts and any renewals thereof by any other entity.

59. As a further result, the plaintiff is entitled to declaratory judgment holding that any other entity to which performance is delegated is obligated to perform the contracts in a manner identical to Gulf and/or Cumberland Farms.

**COUNT V - STATUTORY RIGHT OF REFUSAL OR BONAFIDE OFFER**

60. Paragraphs 1 through 59 of the Fourth Count are hereby incorporated by reference and made paragraphs 1 through 59 of this the Fifth Count.

61. Several of the transactions referred to hereinabove, constitute a sale, assignment or other transfer of the premises upon which the Gulf Dealers operate their service stations.

62. Despite the numerous transactions, none of the plaintiff Gulf Dealers were tendered a bona fide right to purchase the subject premises or offered a right of first refusal with respect to the purchase of said premises.

63. Furthermore, the defendants ArcLight, Chelsea and PMG Northeast, LLC directly or indirectly tendered renewal contracts which contain provisions which were not agreed to by the plaintiff Gulf Dealers.

64. As a result, the defendants failed to comply with their obligations under Conn. Gen. Stat. § 42-133mm.

65. As a further result, the plaintiffs are entitled to monetary and injunctive relief.

## COUNT VI - Improper Taxation and Gasoline Pricing

66. Paragraphs 1 through 65 of the Fifth Count are hereby incorporated by reference and made paragraphs 1 through 65 of this the Sixth Count.

67. At all relevant times after accepting the delegation of the duty to set gasoline prices, the defendants ArcLight, Blue Hills, Chelsea and PMG Northeast, LLC improperly calculated and imposed Connecticut gross receipts tax upon the Gulf Dealers, Conn. Gen. Stat. §12-587 and Regulations 12-602-1a..

68. Despite demand, the defendants refused to correct the improper calculation and imposition of tax.

69. As a result, the defendants intentionally converted monies properly owed to the plaintiff Gulf Dealers to themselves.

70. As a result, the plaintiff Gulf Dealers suffered monetary damages.

71. As a further result, the plaintiff Gulf Dealers are entitled to double or treble damages.

72. In addition, immediately after accepting the delegation of the duty to set a fair or just and reasonable wholesale price for motor fuels, the defendants ArcLight, Blue Hills, Chelsea and/or PMG immediately and drastically increased the wholesale price of motor fuels to the Gulf Dealers without some other financial consideration.

73. As a result, the Gulf Dealers were hindered or unable to effectively to compete in the retail market.

74. As a result, the defendants violated their obligations under Art. 2 of the Uniform Commercial Code, Conn. Gen. Stat. §§ 42a-2-305(2), 42a-1-203, 42a-2-103.

75. As a further result, the plaintiff Gulf Dealers are entitled to their remedies under the code, Conn. Gen. Stat. § 42a-2-701 et seq.

**JURY DEMAND:**

76. The plaintiffs hereby demand trial by jury.

**WHEREFORE,** the plaintiffs demand:

a. Declaratory judgment holding that Gulf and Cumberland Farms must stand behind the performance of its putative delegatee(s) and their successors that such delegatee(s) or successors must perform identically to Gulf and Cumberland Farms including all compliance with all applicable laws;

b. An injunction enjoining the defendants from engaging in practices complained of herein;

c. A permanent injunction enjoining the transfer/delegation or assignment of the Gulf Dealers franchise;

d. An injunction mandating that the real estate interests for the franchise locations on which the plaintiff's stations are located be offered to the plaintiffs under the same terms as they were offered to Chelsea, PMG Northeast, LLC, Petroleum Marketing Group or any other third party or in the alternative, that each plaintiff be offered a bona fide right to purchase the real property on which its station is located.

e. Actual damages;

f. Punitive damages;

g. Treble damages;

h. Attorneys' fees and costs';

i. An order enjoining the defendants from tendering renewal contracts with terms different from their existing (or expiring) contracts with Gulf and/or Cumberland Farms;

j. An order that the defendants provide to the plaintiffs bonafide offers to purchase each service station referred to hereinabove;

k. An order of specific performance with respect to the express or implied contracts; and,

l. Such other relief as the Court deems just and proper.

THE PLAINTIFFS,
GULF DEALERS OF CONNECTICUT

By: ___________________________

John J. Morgan
BARR & MORGAN
22 Fifth Street
Stamford, CT 06905
Tel. No. (203) 356-1595
Fax No. (203) 357-8397
Juris No. CT 13312